UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

DISCOVER GROWTH FUND,

         Plaintiff,

  -against-

6D GLOBAL TECHNOLOGIES INC.; NEW YORK GLOBAL GROUP, INC. ; NYGG (ASIA), LTD.; BENJAMIN TIANBING WEI A/K/A BENJAMIN WEY; TEJUNE KANG; MARK SYNKOWSKI; ADAM HARTUNG; DAVID S. KAUFMAN; TERRY MCEWEN; ANUBHAV SAXENA; TIANYI WEI; MICHAELA WEI; SEREF DOGAN ERBEK,

         Defendants.

15 Civ. _____ ( )

------------------------------------- x

## DECLARATION OF JOHN KIRKLAND IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE FOR AN ATTACHMENT AND TEMPORARY RESTRAINING ORDER

I, John Kirkland, hereby declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the following is true and correct:

    1.    I am the Fund Manager of Discover Fund Management, LLLP, which is the investment advisor for plaintiff Discover Growth Fund ("Discover"). I submit this declaration in support of plaintiff Discover's application by order to show cause for an order of attachment and temporary restraining order enjoining and restraining Defendants and their successors, assigns, agents, employees, officers, attorneys and all other persons acting in concert or in participation with any of them from transferring, disposing of, encumbering or otherwise diminishing or secreting any money, real or personal property, or other assets.

1.      On August 10, 2015, Discover entered into a Stock Purchase Agreement ("SPA") with 6D Global Technologies, Inc. ("6D Global"), and on August 13, 2015, 6D Global confirmed receipt of a $10,000,000.00 wire transfer from Discover.  On August 15, 2015, I received an email from 6D Global's Chairman and CEO, Tejune Kang, requesting a meeting in our office.  Mr. Kang informed me that he was bringing a representative of defendant NYGG (Asia) Ltd., 6D Global's largest shareholder.

2.      On August 18, 2015, Mr. Kang arrived at my office with a man he introduced as Benjamin Wei, whom he described as his controlling stockholder, saying "basically, I work for him."  Mr. Wei, whom I had never heard of and never seen before, proceeded to inform me, for the first time, that he controlled NYGG, and that through NYGG he controlled all of 6D Global, its stock, and its operations, and that Mr. Kang worked for him.  Mr. Wei further stated that there was "no real public float" in 6D Global, and that virtually all free trading shares of the company were controlled by him and his "friends in China."  He further explained that recent increases in stock price that had occurred for no apparent reason were caused by Mr. Wei and his group, further showing his control over the stock of 6D Global.  Mr. Wei told me, in the presence of Kang, that if Discover ever wanted to sell its shares, it should not sell them in the open market but should instead sell them directly to Mr. Wei or to whom he directed.

3.      After it became public that the Department of Justice filed its indictment of Mr. Wei on September 8, 2015 (the "Indictment"), arrested Mr. Wei on September 10, 2015, and the Securities and Exchange Commission filed their Complaint against Mr. Wei and certain other defendants on September 10, 2015 (the "SEC Action"), and following the subsequent suspension of trading in 6D Global's stock by NASDAQ, I telephoned Mr. Kang repeatedly and was finally able to reach him on September 11, 2015.  Mr. Kang advised me that NASAQ had asked 6D

Global several questions about the involvement of Mr. Wei in the company. He told me that the company had a written agreement with Mr. Wei to act as a "consultant," pursuant to which he was given material non-public information about the company. He also said that one of the current directors had been appointed to the board by Mr. Wei when the company was known as CleanTech.

        4.        I asked Mr. Kang where Discover's $10 million was. He said the money was all still in the bank, because the acquisitions the money was supposed to be used for had not closed, and that as a result of the halt on the stock they were now dead. He then changed his answer, saying that the money was being depleted daily to fund operations, but that "almost all" of it was still in 6D Global's bank account. I told Mr. Kang that we were still attempting to investigate the true facts, and that he and I would have to have "a very serious conversation" before any more money was dissipated. He responded, "I understand."

        5.        I asked for a follow up call with Mr. Kang, and was able to reach him again on September 15, 2015. He immediately had his attorney join the call. I informed them that the transaction must be rescinded, and Discover's $10 million returned. Mr. Kang made no response, his attorney said that someone would get back to me. I asked that they do so by the next day. I received no response. I attempted to telephone Mr. Kang, but he did not pick up my call. I received an email on September 18, 2015, stating "we do not agree that the transaction should be rescinded."

I declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.  Executed on September 25, 2015 at 12:45 pm (Atlantic time), St. Thomas, United States Virgin Islands.

_____
John Kirkland