**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Robert F. Serio
Direct: +1 212.351.3917
Fax: +1 212.351.5246
RSerio@gibsondunn.com

October 30, 2015

VIA ECF

Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   Discover Growth Fund v. 6D Global Technologies Inc., et al. No. 15-cv-07618

Dear Judge Castel:

We represent Discover Growth Fund ("Discover"), Plaintiff in the above captioned action. We are writing in response to the letter filed end of day yesterday, October 29, 2015, by Defendant 6D Global Technologies Inc. ("6D").

Despite the "sl[e]ight of hand" allegation by 6D, New York law with respect to Wei's taking the Fifth supports Discover's position. 6D's own cases confirm this is true. In *Wechsler v. Hunt Health Systems, Ltd.*, 2003 WL 21998980, *3 (S.D.N.Y. Aug. 22, 2003) the Southern District Court confirmed that this Circuit "has allowed even a non-party's assertion of the Fifth Amendment privilege to be held against a party to the proceeding." (citing *Libutti v. United States*, 107 F.3d 110, 121 (2d Cir.1997); *In Re Payroll Express Corp. v. Aetna Casualty & Sur. Co.*, 216 B.R. 344, 364 (S.D.N.Y.1997); *United States v. District Counsel of New York City and Vicinity of United Bhd. of Carpenters and Joiners of America*, 832 F.Supp. 644, 651-52 (S.D.N.Y.1993)). And in *Willingham v. County of Albany*, the case most heavily relied on by 6D, the Northern District Court, relying on *Libutti*, confirms the same. 593 F. Supp. 2d 446, 452-53 (N.D.N.Y. 2006). As *Willingham* and *Wechsler* confirm, in the Second Circuit, "a number of non-exclusive factors" guide the determination of whether an adverse inference can apply, "including the nature of the relevant relationships, the degree of control over the non-testifying witness, the compatibility of the interests between the non-testifying witness and the party, and the role of the non-testifying witness in the litigation. *Id.* citing *Libutti*, 107 F.3d at 123–24. "Whether these or other circumstances unique to a particular case are considered by the trial court, the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.*

**GIBSON DUNN**

Discover has adequately established every one of the Second Circuits *non-exclusive* factors to permit this Court to take an adverse inference from the Co-Defendant Weis taking the Fifth in the SEC investigation.[1] The record supports that Wei, a co-defendant in this litigation, dominated and controlled 6D, has interests completely aligned with 6D, and has used 6D to defraud investors. Such evidence includes:

a) the declarations of Defendants Kang and Synkowski confirming that Wei was retained by 6D as a consultant;

b) the declarations of Kang and John Kirkland confirming that Wei travels with Kang;

c) Kang's emails to Kirkland, attached to the Supplemental Declaration of John Kirkland, describe Wei as a representative of "a major shareholder";

d) Kirkland's declaration says that Wei stated in Kang's presence it was he who really controlled the company, and that Kang admitted that he worked for Wei;

e) Kang admitted in his own declaration that Wei's wife lent Kang $100,000 to buy 6D stock when no other lender would lend the money– an admission that fairly lines up with the fraud scheme alleged by the SEC and DOJ involving the Weis' manipulation of corporate stock through hand-selected nominees;

f) news reports have confirmed that Wei was being investigated due to his role in CleanTech, now 6D, in 2012;

g) 6D admits that Co-Defendant NYGG Asia owns and controls 45% of 6D's stock; and

h) CleanTech's own filings, as well as snapshots from Co-Defendant New York Global Group's website, confirm that Wei was the representative and controlling person of NYGG Asia.

Such an evidentiary showing is more than sufficient to establish Wei's relationship, control and compatibility of interest with 6D for purposes of the adverse inference and to establish Discover's likelihood of success on the merits of its fraud and breach of warranty claims.

---

[1] The SEC confirmed in the civil action filed in this Court that Wei and his wife took the Fifth in the SEC's own investigation. And, contrary to 6D's suggestion otherwise, Discover would have welcomed the opportunity to have Wei at the attachment hearing on October 5 and still look forward to his appearance in this litigation. Process servers, however, upon attempt were barred from even approaching his personal residence—as they were banned from 6D's offices in their attempts to serve Wei and the other defendants.

**GIBSON DUNN**

The record also establishes that 6D Global had knowledge of Wei's control and of the investigations at the time the SPA was executed. Either as controlling person (through NYGG Asia) or as consultant--both established by the evidence--Wei's knowledge is imputed to 6D. *See Baker v. Latham Sparrowbush Ass.*, 72 F.3d 246, 255 (2d Cir.1995) ("knowledge of a . . . controlling person of a corporation is imputable to that corporation."); *Center v. Hampton Affiliates, Inc.*, 488 N.E. 2d 828, 829 (N.Y. 1985) ("As a general rule, knowledge acquired by an agent acting within the scope of his agency is imputed to the principal, and the principal is bound by such knowledge although the information is never actually communicated to it.") To the extent actual knowledge is required, however, it can be inferred from the strong circumstantial evidence outlined above, including CEO and remaining board member Kang's unusually close relationship with the Weis. For an attachment under CPLR 7502(c) Discover is entitled to all legitimate inferences from the evidence in the record summarized above. Discover need not meet the proof required for summary judgment for an attachment to issue here.

Discover has unquestionably demonstrated a likelihood of success on its breach of contract claims. The closing condition in Section II.C.6 expressly refers to a "pending … investigation which *may* have the effect of … adversely effecting *any* of the transactions contemplated by this Agreement", not just the closing of the sale of Preferred Shares on August 10. 6D cannot deprive the clear and concise words of this provision of their plain meaning. This closing condition, as well as the additional non-closing representations and warranties as described in Discover's letter of October 28 were breached on August 10, the date the deal was signed and closed. Unfortunately, Discover did not discover the breach, or the fraud, until Wei was indicted and taken into custody.

Given that Discover has established a likelihood of success on the merits of its breach of contract and fraud claims, it is critical that an attachment be entered as soon as possible. 6D continues to cite the company's August 2015 business prospects, both here and in Ireland, as proof that it is still today a viable going concern, but such arguments no longer have merit. Even if 6D may have appeared as a viable business in August, in the wake of the DOJ Indictment, the SEC Action, the NASDAQ halt, the loss of strategic acquisitions, the shareholder litigation and class action lawsuits, 6D is no longer viable and likely never will be again.

6D Global is not a real business. A service enterprise that loses money every month is not a business, it is a sham that exists solely to pump and dump the stock and defraud investors. It is time to put an end to the ongoing misconduct of Wei, his crony Kang, and the corporation they control.

6D continues to tout its revenue of $1.5 million, but still has not disclosed what its outflows are, or how much of Discover's stolen $10 million it has left. The lack of disclosure of such

**GIBSON DUNN**

basic and easily calculable figures is itself telling, and not in a promising way.  Discover will lose any value remaining on its claims very quickly without the requested attachment.[2]

Respectfully,

/s Robert F. Serio
Robert F. Serio

cc: Tom M. Fini (by ECF)
cc: David S. Versfeldt (by ECF)

---

[2] While the financial necessity for the attachment establishes a right under CPLR 7502(c), Discover is also entitled to an attachment under CPLR 6201 because 6D is a Delaware corporation admittedly not registered to do business in New York.  Despite promising to register, more than a month later 6D has still failed to show that it ever did.