```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DISCOVER GROWTH FUND,                          :
                                               :
                        Plaintiff,             :
                                               :
        - against -                            :
                                               :
6D GLOBAL TECHNOLOGIES INC.; NEW               :
YORK GLOBAL GROUP, INC.; NYGG                  :
(ASIA), LTD,; BENJAMIN TIANBING WEI            :    Civil Action No.: 15-cv-7618 (PKC)
A/K/A BENJAMIN WEY; TEJUNE KANG;               :
MARK SYNKOWSKI; ADAM HARTUNG;                  :
DAVID S. KAUFMAN; TERRY MCEWEN;                :
ANUBHAV SAXENA; TIANYI WEI;                    :
MICHAELA WEI ; SEREF DOGAN ERBEK,              :
                                               :
                        Defendants.            :
-----------------------------------------------------------------x
```

# MEMORANDUM OF LAW OF THE OFFICER/DIRECTOR DEFENDANTS IN SUPPORT OF THEIR MOTION, AND OF 6D GLOBAL TECHNOLOGIES, INC. IN RENEWAL OF ITS MOTION, TO COMPEL ARBITRATION AND STAY THESE PROCEEDINGS

K&L GATES LLP
599 Lexington Avenue
New York, NY 10022
(212) 536-3900

*Attorneys for Defendant 6D Global Technologies, Inc., Tejune Kang, Mark Szynkowski, Adam Hartung, David S. Kaufman, Terry McEwan,* and *Anubhav Saxena*

NY-1243420

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND..........................................................................................................2

    Discover Invests in 6D Global.................................................................................................2

    The Stock Purchase Agreement...............................................................................................2

    This Lawsuit and Discover's Petition for an Attachment of 6D Global's Assets ................3

    This Court Denies Discover's Request for an Attachment ...................................................5

    Eventual Service of Process on the Individual Defendants ...................................................6

ARGUMENT....................................................................................................................................6

I.    THE SPA'S BROAD AND BINDING ARBITRATION AGREEMENT
    REQUIRES ARBITRATION OF DISCOVER'S CLAIMS..........................................7

    A.    Strong federal policy favors arbitration of the parties' dispute. ............................7

    B.    The SPA's arbitration agreement is enforceable under the FAA. ..........................8

    C.    By its terms, the SPA's arbitration clause requires that any questions of
    arbitrability must be decided by the arbitrator.........................................................8

    D.    The SPA's broad arbitration clause clearly covers the underlying disputes............9

II.    DISCOVER'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS
    ALSO FALL WITHIN THE ARBITRATION CLAUSE BECAUSE THEY
    ARE OFFICERS OR FORMER DIRECTORS OF 6D GLOBAL AND THE
    TARGETS OF THE EXACT SAME CLAIMS AS 6D GLOBAL...............................10

    A.    Discover's claims against the Individual Defendants must be arbitrated
    because each Individual Defendant was an agent of 6D Global............................11

    B.    Discover is estopped from denying that its claims against the Individual
    Defendants must be arbitrated because they are the same claims that
    Discover has asserted against 6D Global...............................................................12

CONCLUSION ..............................................................................................................................14

## TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013) ................................................................................................. 9

*Brener v. Becker Paribas Inc.*,
    628 F. Supp. 442 (S.D.N.Y. 1985) ............................................................................. 11

*Emilio v. Sprint Spectrum L.P.*,
    508 F. App'x 3 (2d Cir. 2013) ..................................................................................... 9

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) .................................................................................................... 8

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*,
    371 F. Supp. 2d 571 (S.D.N.Y. 2005) ......................................................................... 9

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000) ...................................................................................................... 7

*Hamerslough v. Hipple*,
    No. 10-cv-3056, 2010 WL 4537020 (S.D.N.Y. Nov. 4, 2010) .................................. 11

*Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2001) ....................................................................................... 7

*Highland HC, LLC v. Scott*,
    113 A.D.3d 590 (2d Dep't 2014) .............................................................................. 12

*Hird v. iMergent, Inc.*,
    No. 10-cv-166, 2011 WL 43529 (S.D.N.Y. Jan. 6, 2011) ......................................... 13

*Hirschfeld Prods. v. Mirvish*,
    88 N.Y.2d 1054 (N.Y. 1996) ..................................................................................... 12

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) ..................................................................................... 12

*Lapina v. Men Women N.Y. Model Mgmt. Inc.*,
    86 F. Supp. 3d 277, 285 (S.D.N.Y. 2015) ................................................................. 11

*Maye v. Smith Barney Inc.*,
    897 F. Supp. 100 (S.D.N.Y. 1995) ............................................................................ 11

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983) ............................................................................................... 7

*PaineWebber Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996) ............................................................................... 8

*Regency Capital, LLC v. Corpfinance Int'l, Inc.*,
   No. 02-cv-5615, 2003 WL 22400200 (S.D.N.Y. Oct. 20, 2003) ...................... 13

*Rep. of Ecuador v. Chevron Corp.*,
   638 F.3d 384 (2d Cir. 2011) ............................................................................... 7

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993) ..................................................................... 11, 13

*Shearson/Am. Express, Inc. v. McMahon*,
   482 U.S. 220 (1987) ......................................................................................... 10

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Intern., Inc.*,
   198 F.3d 88 (2d Cir. 1999) ................................................................................. 8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ...................................................................................... 9-10

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1995) ............................................................................... 10

*WorldCrisa Corp. v. Armstrong*,
   129 F.3d 71 (2d Cir. 1997) ............................................................................... 10

**Statutes and Other Authorities**

9 U.S.C. § 201 ............................................................................................................. 7

9 U.S.C. § 206 ............................................................................................................. 8

Fed. R. Civ. P. 4(d) ..................................................................................................... 6

N.Y. CPLR § 7502 ...................................................................................................... 1

N.Y. CPLR § 7502(c) ................................................................................................. 4

JAMS International Arbitration Rules Article 17 ...................................................... 9

JAMS Streamlined Arbitration Rules and Procedures Rule 8(b) ............................... 9

**PRELIMINARY STATEMENT**

Eleven months ago, in October 2015, this Court vacated a temporary restraining order and denied a petition for attachment filed by Plaintiff Discover Growth Fund ("Discover") against Defendant 6D Global Technologies, Inc. ("6D Global"), which Discover sought in aid of arbitration pursuant to N.Y. CPLR § 7502. Discover acknowledged before this Court that its dispute with 6D Global was arbitrable pursuant to the broad and binding arbitration clause contained in the August 2015 Stock Purchase Agreement ("SPA") executed by Discover and 6D Global. To this day, however, Discover has not initiated an arbitration.

Instead, after waiting more than eleven months, Discover's new counsel has chosen to serve the original complaint on six individual defendants—Tejune Kang and Mark Szynkowski (the "Officer Defendants"), Adam Hartung, David S. Kaufman, Terry McEwan, and Anubhav Saxena (the "Director Defendants") (together, the "Individual Defendants"), all of whom are officers and/or former directors of 6D Global—in an apparent attempt to evade the SPA's broad arbitration clause and to resuscitate litigation in this Court. Discover has indicated to 6D Global's counsel that it wishes to begin taking discovery and otherwise move this action forward in this Court against the Individual Defendants.

Discover's efforts should be rejected. For the reasons set out in 6D Global's September 2015 cross-motion[1] and renewed herein, Discover may not proceed in this Court against 6D Global. To press its claims, Discover must arbitrate in the Virgin Islands. And now that Discover has served the Individual Defendants, the well-established law of this Circuit prohibits Discover from proceeding in this Court against the individuals, who are not alleged to have taken any

---

[1] *See* Mem. of Law in Opposition to Order to Show Cause for an Order of Attachment and a Temporary Restraining Order, and in Support of Cross-Motion to Compel Arbitration, along with accompanying Declarations of Tejune Kang and Mark Szynkowski, dated October 2, 2015, ECF Docket Nos. 19–21.

1

action except in their capacities as officers and directors of 6D Global. As a result, the Individual Defendants now join 6D Global in moving to compel arbitration and stay these proceedings.

## FACTUAL BACKGROUND

### Discover Invests in 6D Global

Seeking growth and financing opportunities, in August of 2015 6D Global entered into negotiations with Discover to finalize a financing transaction pursuant to which Discover would become a Preferred Stockholder of 6D Global through its equity investment of $10,000,000 in exchange for 1,088 shares of preferred stock at an 8% original issuer discount. *See* Declaration of Mark Szynkowski, dated October 2, 2015 ("Szynkowski Decl."), ECF Docket No. 19 ¶¶ 23–24; Memorandum and Order [on Motion for Attachment], ECF Docket No. 52 (Oct. 30, 2015), at 3 (hereafter "Mem. And Order"). At the time of the negotiations, 6D Global was told that the transaction would be consummated in accordance with the SPA that Discover had drafted, and the parties therefore did not engage in any substantial negotiation of the terms of the SPA. *See* Szynkowski Decl. ¶¶ 25–26.

### The Stock Purchase Agreement

On August 10, 2015, pursuant to Discover's form SPA, Discover made a $10 million equity investment in 6D Global in exchange for convertible preferred shares in 6D Global. By way of its equity investment, Discover therefore became (and remains) a preferred shareholder in 6D Global. The SPA was signed on behalf of 6D Global by Defendants Tejune Kang and Mark Szynkowski, respectively the CEO and CFO of the company. *See* Szynkowski Decl. ¶ 24 & Ex. 11; Mem. and Order, at 3.

The SPA contains a broad arbitration clause that requires submission of "any dispute ... arising out of, related to, or in connection with" the SPA—including any

2

questions of arbitrability—to an arbitrator at JAMS International in the Virgin Islands.

The arbitration clause reads as follows:

> **Arbitration.** Any dispute, controversy, claim or action of any kind arising out of, relating to, or in connection with this Agreement, or in any way involving Company and Investor or their respective Affiliates, including any issues of arbitrability, will be resolved solely by final and binding arbitration in English before a retired judge at JAMS International, or its successor, in the Territory of the Virgin Islands pursuant to the most expedited and Streamlined Arbitration Rules and Procedures available.

SPA § VI.H; *see also* Mem. and Order, at 6 n.3. The SPA further contains a governing law clause, which provides as follows:

> **Governing Law.** All matters between the parties, including without limitation questions concerning the construction, validity, enforcement and interpretation of the Transaction Documents will be governed by and construed and enforced in accordance with the laws of the Cayman Islands, without regard to the principles of conflicts of law that would require or permit the application of the laws of any other jurisdiction . . . .

SPA § VI.G. Discover included these arbitration and governing law clauses in the very first draft of the SPA that it sent to 6D Global, and they remained unchanged in the final version that the parties executed. *See* Szynkowski Decl. ¶ 26.

**This Lawsuit and Discover's Petition for an Attachment of 6D Global's Assets**

On September 28, 2015, Discover filed its Complaint in this action, alleging breach of contract, securities fraud, and various tort claims, "all" of which "are dependent on Discover demonstrating that [6D Global] made representations in the SPA that it knew were false and omitted critical information from the SPA that it knew was material." Mem. and Order, at 25–26. Each claim is alleged against 6D Global as well as each of the six Individual Defendants; Discover does not make a single allegation against any of the officers or directors that is not also alleged against 6D Global. *See* ECF Docket No. 1.

3

By motion, also dated September 28, 2015, Discover petitioned this Court for attachment of 6D Global's assets and obtained, *ex parte*, a temporary restraining order, dated September 28, 2015, that prevented 6D Global from transferring, disposing of, encumbering, or otherwise diminishing any money, real or personal property, or assets of 6D Global. *See* ECF Docket Nos. 7, 10. Immediately thereafter, Discover served 6D Global with all of these materials. Notably, however, Discover did not serve—and made no effort to serve—any of the other defendants, including any of the six Individual Defendants who, with 6D Global, now bring this motion.

On October 2, 2015, 6D Global filed its papers in opposition to Discover's application, while also cross-moving to compel arbitration and stay these proceedings. *See* ECF Docket No. 21. Over the next month, the parties wrote letters and appeared before this Court to address Discover's attachment petition and 6D Global's cross-motion and, in the meantime, to modify the temporary restraining order to allow 6D Global to make payroll and otherwise stay in business. *See* ECF Docket Nos. 8, 9, 27, 29–33, 36, 40, 41, 45, 47–51 (letters from counsel to the Court).

In its reply papers in support of its attachment petition, Discover readily conceded that this suit must be arbitrated pursuant to the SPA's broad arbitration clause, explicitly stating that it sought attachment, pursuant to N.Y. CPLR § 7502(c), in aid of an arbitration that it said it would soon initiate:

> To the extent 6D Global insists on enforcing the SPA's arbitration clause, Discover respectfully requests that this Court issue an attachment order in aid of arbitration. ***Discover will commence an arbitration against 6D Global within 30 days pursuant to the SPA*** and will prosecute this Action against the remaining defendants that are not parties to the SPA. ***The attachment order is necessary to preserve any hope that Discover can collect from 6D Global on the ultimate arbitration award.***

4

Discover's Reply Mem. in Further Support of its Motion for an Attachment (Oct. 4, 2015), ECF Docket No. 22, at 5 (emphasis added). At oral argument before this Court, Discover's counsel again reiterated its concession. *See* Hearing Tr. (Oct. 5, 2015), at 27 ("[T]his now should be viewed as a request for a writ of attachment in aid of arbitration . . . . We will commence an arbitration against the company within the 30-day period."); Mem. and Order, at 5–6.

**This Court Denies Discover's Request for an Attachment**

On October 30, 2015, this Court entered its Memorandum and Order denying Discover's petition for attachment of 6D Global's assets, on the ground that Discover had failed to meet the high bar of showing a likelihood of success on the merits of any of its claims. *Id.* at 8–9. The Court's opinion thoroughly traced each of Discover's arguments and claims throughout 28 pages of analysis, found that Discover "focused almost exclusively on the arguments supporting its breach of contract claim," and ultimately concluded that Discover "failed to show a probability of success on the merits of any of the eleven claims it alleges against 6D." *Id.* at 27. As a result, the Court denied Discover's application for provisional relief in its entirety.

The Court did not explicitly rule on 6D Global's cross-motion to compel arbitration and stay proceedings, presumably because Discover had acknowledged in the course of litigating its attachment petition that the dispute is arbitrable, and thus 6D Global's motion was not really in dispute. The Court acknowledged that "[t]he SPA contains a broad arbitration clause," *id.* at 6 n.3, and the Court noted Discover's representation in open court that it sought attachment only "in aid of an arbitration that it stated it intends to initiate within 30 days of" the Court's order. Mem. and Order, at 5–6; *see also id.* at 6 ("Discover has announced its intention to timely commence an arbitration in the Virgin Islands against 6D . . . Discover has made it plain that it is seeking the attachment in aid of arbitration."). In any event, 6D Global's motion to compel arbitration remains pending. *See* ECF Docket No. 21.

5

Discover never filed a notice of appeal following the Court's denial of its attachment application.

**Eventual Service of Process on the Individual Defendants**

For the next nine months, Discover did nothing further with respect to this case or any arbitration against 6D Global, except to substitute counsel on May 26, 2016. *See* ECF Docket No. 54.

Then, on July 26, 2016, Discover submitted to the undersigned counsel, pursuant to Fed. R. Civ. P. 4(d), forms requesting the Individual Defendants to waive service of exactly the same Complaint that it filed on September 28, 2015. On July 27, service was accepted on behalf of each Individual Defendant. *See* ECF Docket No. 57.

## ARGUMENT

As noted, the SPA states:

> **Arbitration.** Any dispute, controversy, claim or action of any kind arising out of, relating to, or in connection with this Agreement, *or in any way involving [6D Global] and [Discover] or their respective Affiliates, including any issues of arbitrability, will be resolved solely by final and binding arbitration* in English before a retired judge at JAMS International, or its successor, in the Territory of the Virgin Islands . . . .

SPA § VI.H (emphasis added).

Discover expressly sought attachment in aid of arbitration, acknowledging that the SPA's arbitration clause is binding. *See* Discover's Reply Mem., ECF Docket No. 22, at 5; Hearing Tr. (Oct. 5, 2015), at 27; Mem. and Order, at 6. But Discover never followed through to initiate arbitration, and it was rebuffed in its efforts to secure provisional relief. Now Discover seeks to pursue exactly the same claims against 6D Global's officers and former directors, apparently in order to evade the clear language of the arbitration clause. That path is foreclosed by established

6

law, and as a result, this Court should instead enforce the parties' clear contractual agreement to arbitrate.

I. **THE SPA'S BROAD AND BINDING ARBITRATION AGREEMENT REQUIRES ARBITRATION OF DISCOVER'S CLAIMS.**

The SPA's arbitration agreement concerns an international commercial relationship between Discover, a Cayman Islands corporation, and 6D Global, a Delaware corporation. It is therefore governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, entered into force on June 10, 1958 ("New York Convention"). The United States is a party to the New York Convention, which was implemented through Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201.

A. **Strong federal policy favors arbitration of the parties' dispute.**

Strong federal policy favors arbitration. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) ("Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ."); *Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001). This is particularly so in the context of international transactions. *See Rep. of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) (noting that "arbitral agreements promote the smooth flow of international transactions by removing the threats and uncertainty of time-consuming and expensive litigation") (internal quotation omitted). Accordingly, the burden rests on Discover to prove "that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Discover cannot do so in light of its prior admission to this Court that its claims against 6D Global are, in fact, subject to the SPA's broad arbitration clause. Nevertheless, even

7

without that admission, Discover cannot meet its burden of proving that its claims should not be arbitrated.

### B. The SPA's arbitration agreement is enforceable under the FAA.

The SPA's arbitration agreement meets the four requirements for enforceability under the FAA: (1) the SPA is "a written agreement"; (2) the SPA "provide[s] for arbitration in the territory of a signatory of the convention," here the Virgin Islands; (3) the "subject matter [of the SPA]" is "commercial," namely relating to an equity investment in a business venture; and (4) the SPA is not "entirely domestic in scope" because, by definition, it is a contract between an international party (Discover) and a domestic party (6D Global). *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Intern., Inc.*, 198 F.3d 88, 92 (2d Cir. 1999). Accordingly, the New York Convention and Chapter 2 of the FAA provide for jurisdiction in this Court for the limited purpose of compelling arbitration. *See* 9 U.S.C. § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

### C. By its terms, the SPA's arbitration clause requires that any questions of arbitrability must be decided by the arbitrator.

The SPA's arbitration clause, which Discover drafted (*see* Szynkowski Decl. ¶¶ 25–26), provides that "any issues of arbitrability" must be decided by the arbitrator. SPA § VI.H.

Where the parties to an arbitration agreement offer "clea[r] and unmistakabl[e] evidence" of their intent to submit the question of arbitrability to the arbitrator, that decision must be respected. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). There could be no clearer demonstration of the parties' agreement to submit questions of arbitrability to the arbitrator than the SPA's express statement to that effect. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (ruling that clause requiring arbitration of "any and all

controversies" was clear evidence of intent to submit questions of arbitrability to arbitrator); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 371 F. Supp. 2d 571, 575 (S.D.N.Y. 2005) (enforcing arbitration clause that "clearly and unmistakably evidences the parties' intent to submit questions of arbitrability to an arbitrator").

Finally, the SPA's arbitration clause expressly incorporates the arbitration rules of JAMS International, which also state that questions of arbitrability will be decided by the arbitrator. *See* Art. 17 of the JAMS International Arbitration Rules; Rule 8(b) of the JAMS Streamlined Arbitration Rules and Procedures. Where the parties have adopted an institution's rules that expressly provide that the arbitrator will decide questions of arbitrability, the Court must refer all such questions to arbitration. *See Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013) (relying "specifically on this JAMS rule to conclude that the parties had clearly committed gateway questions of arbitrability to the arbitrator").

### D. The SPA's broad arbitration clause clearly covers the underlying disputes.

Because the SPA directs that issues of arbitrability should be decided by the arbitrator, the Court need not address whether the disputes raised by Discover in its complaint are, in fact, subject to the SPA's broad arbitration clause.

Nevertheless, the SPA's arbitration clause clearly encompasses the present dispute. The SPA requires that "[a]ny dispute, controversy, claim or action of any kind arising out of, relating to, or in connection with this Agreement, *or in any way involving [6D Global] and [Discover]* or their respective Affiliates, including any issues of arbitrability" be submitted to binding arbitration. SPA § VI.H (emphasis added). Such a broad clause agreed to by two sophisticated commercial parties must be enforced. *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (noting "courts must 'rigorously enforce' arbitration agreements according to their terms") (internal citations omitted); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l*

*Corp.*, 559 U.S. 662, 682 (2010) ("[W]e have said on numerous occasions that the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms.") (internal quotation omitted).

Here, Discover alleges breaches of the SPA itself, fraud and securities law claims based on omissions and misrepresentations in the SPA, and common law claims, each and every one of which expressly references, and arises out of, Discover's entry into the SPA. *See* Compl. (ECF Docket No. 1) ¶¶ 64–116. Each claim is asserted against both 6D Global and the Individual Defendants, and every claim is covered by the express terms of the arbitration provision. That includes Discover's securities fraud claims. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987).

## II. DISCOVER'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ALSO FALL WITHIN THE ARBITRATION CLAUSE BECAUSE THEY ARE OFFICERS OR FORMER DIRECTORS OF 6D GLOBAL AND THE TARGETS OF THE EXACT SAME CLAIMS AS 6D GLOBAL.

Discover's claims against the Individual Defendants are no less arbitrable than the exact same claims Discover asserts against 6D Global, because the six officers and then-directors are also bound by the SPA's broad and enforceable arbitration clause. The well-established law of this Circuit holds that a plaintiff may not circumvent a broad arbitration clause by proceeding with identical claims against corporate officers and directors instead of the company.

While arbitration is contractual in nature, it "does not follow" that "an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (quotation omitted). Rather, "[o]rdinary principles of agency and contract law may . . . provide grounds for holding a non-signatory to an arbitration agreement." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997). This must be so to ensure that plaintiffs "cannot avoid arbitration for

which they had contracted simply by adding a nonsignatory [party], lest the efficacy of contracts and the federal policy favoring arbitration be defeated." *Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 285 (S.D.N.Y. 2015).

Courts within this Circuit have found claims against non-signatory officer and director defendants to be arbitrable on several grounds, two of which are individually determinative here: (a) agency; and (b) estoppel.

### A. Discover's claims against the Individual Defendants must be arbitrated because each Individual Defendant was an agent of 6D Global.

Discover cannot avoid arbitration with the Individual Defendants because all of the allegations in Discover's Complaint reflect that the Individual Defendants were agents of 6D Global whose alleged misconduct relates exclusively to their behavior in their capacities as officers or directors of the company. "Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (collecting cases).

So, for example, one district court in this circuit found that a plaintiff's claims against non-signatory corporate director defendants alleged to have effectuated employment law violations must be arbitrated because the directors were all agents of the company. *Hamerslough v. Hipple*, No. 10-cv-3056, 2010 WL 4537020, at *2–3 (S.D.N.Y. Nov. 4, 2010) ("This is so regardless of whether the claims against the agents are distinct from those against their employers.") (citing *Roby*, 996 F.2d at 1360). The same is true for corporate officers. *See Maye v. Smith Barney Inc.*, 897 F. Supp. 100, 108–09 (S.D.N.Y. 1995) (claims against officers of brokerage firm arbitrable even though only firm, not officers, was party to arbitration agreement) (citing *Brener v. Becker Paribas Inc.*, 628 F. Supp. 442, 451 (S.D.N.Y. 1985)

(same)). *See also Highland HC, LLC v. Scott*, 113 A.D.3d 590, 594 (2d Dep't 2014) ("Moreover, contrary to [Plaintiff's] contention, the individual defendants, as officers and directors of [the company], are entitled to enforce the arbitration clause to the extent that their alleged misconduct relates to their behavior as agents of the [company].") (relying on *Hirschfeld Prods. v. Mirvish*, 88 N.Y.2d 1054, 1056 (N.Y. 1996)).

As in these cases, Discover cannot escape the SPA's broad and binding arbitration clause by proceeding against the Individual Defendants because all of the allegations against the Individual Defendants relate to their activities as agents of 6D Global. The Officer Defendants actually signed the SPA in their capacities as CEO and CFO of the company. And Discover does not allege that the Director Defendants took any action other than to effectuate 6D Global's alleged breaches of representations and warranties. Because the allegations in the Complaint relate only to the Individual Defendants' actions *on behalf of 6D Global*, they too are protected by the SPA's broad arbitration clause.

### B. Discover is estopped from denying that its claims against the Individual Defendants must be arbitrated because they are the same claims that Discover has asserted against 6D Global.

Additionally, "under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where . . . the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (reversing district court's denial of motion to compel arbitration).

So, for example, the Second Circuit has held that, where the "alleged liability of the individual" non-signatory defendants "arises out of the same misconduct" as the claims against the signatory party, all of the claims must be arbitrated, or else "it would be too easy to circumvent the agreements by naming individuals as defendants instead of" the signatory itself.

12

*Roby*, 996 F.2d at 1360 (requiring arbitration where "[t]he complaints against the individual Chairs are completely dependent on the complaints against the Agents"). And another judge in this District concluded that claims against officers and former directors of a company must be arbitrated where the arbitration clause entered into by the company was "broad" and where the claims against the individual defendants were grounded entirely in "their association with" the company. *Hird v. iMergent, Inc.*, No. 10-cv-166, 2011 WL 43529, at *3 (S.D.N.Y. Jan. 6, 2011) (compelling arbitration against non-parties). Another court likewise found that a plaintiff must arbitrate claims against an officer of the signatory corporate defendant because "the issues involving the non-signatory are intertwined with the agreement containing the arbitration clause." *Regency Capital, LLC v. Corpfinance Int'l, Inc.*, No. 02-cv-5615, 2003 WL 22400200 (S.D.N.Y. Oct. 20, 2003).

Here, the allegations that comprise Discover's claims against the Individual Defendants are inextricably intertwined with the SPA. They are simply the same allegations that Discover makes against 6D Global, allegations which this Court has already found "focused almost exclusively on the arguments supporting [Discover's] breach of contract claim" arising under the SPA. Mem. and Order, at 27. They are grounded entirely in the individuals' association with 6D Global. As a result, the allegations can be heard only in arbitration in the Virgin Islands.

## CONCLUSION

For the foregoing reasons, the Court should grant the renewed motion of 6D Global and the motion of the Individual Defendants to compel arbitration, according to the broad arbitration clause in the SPA, and stay all proceedings in this Court until arbitration is complete.

Dated: New York, New York
       September 21, 2016

K&L GATES LLP

By: _____
    David S. Versfelt
    Anthony P. Badaracco

599 Lexington Avenue
New York, New York 10022-6030
Tel: (212) 536-3900
Fax: (212) 536-3901
david.versfelt@klgates.com
anthony.badaracco@klgates.com

- and -

Brian D. Koosed
1601 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 778-9000
Fax: (202) 778-9100
brian.koosed@klgates.com

*Attorneys for Defendant 6D Global Technologies, Inc., Tejune Kang, Mark Szynkowski, Adam Hartung, David S. Kaufman, Terry McEwan,* and *Anubhav Saxena*